## LORD CALVERT THEATRE, INC. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 67, October Term, 1955.]

608

*Decided January 11, 1956.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Herbert L. Grymes* for the appellant.

*J. Lacy Bradley* and *Lloyd G. McAllister, Assistant
City Solicitors of Baltimore,* with whom were *Thomas
N. Biddison, City Solicitor,* and *Edwin Harlan, Deputy
City Solicitor,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment in favor of the de-
fendant entered after the court sustained a demurrer
to an amended declaration without leave to amend. The
action, in two counts, filed October 14, 1953, sought to
recover from the City damages caused by unreasonable
delay in widening Washington Boulevard in Baltimore
City, along the front of the appellant's property.

The allegations show that in July, 1928, Ordinance 514
was adopted whereby the Commissioners for Opening
Streets were "authorized and directed to condemn, open,
widen and grade Washington Boulevard from its present
width of sixty feet to a width of eighty feet", in accord-
ance with a plat filed in the Commissioners' office which
included the 2400 block of Washington Boulevard. Un-

der Ch. 125, Acts of 1914, the Commissioners for Opening Streets had been designated as the proper authority to "execute" ordinances of this character and they were directed to meet within three months after the passage of any such ordinances and "to proceed diligently thereafter in the further execution of such ordinance", and to report annually the status of their proceedings. Ordinance 514 of 1928 has never been repealed, but no condemnation proceedings have yet been instituted to accomplish the proposed widening in the 2400 block or in any other portion of the highway in that vicinity.

In 1935 the appellant secured the passage of Ordinance 22, granting it the right to erect a moving picture theatre at 2444 Washington Boulevard, which lot it acquired on May 8, 1936. The lot had a frontage of fifty feet and a depth of one hundred thirty-four feet. Under the terms of this ordinance appellant was authorized to erect a building "to be approximately fifty feet wide and one hundred thirteen feet long and to cover all of said premises after the proposed widening of Washington Boulevard, but in all other respects, said building shall be erected under the supervision of the Bureau of Buildings of Baltimore City in accordance with the Building Laws of said City."

The appellant erected its theatre at a cost of some $40,000 in conformity with the authority granted and constructed a marquee extending to the existing building line. It complains that it has been deprived of the use of the twenty foot strip fronting on Washington Boulevard, an area of one thousand square feet, that its business has been adversely affected by the set-back, and that it lost a tenant in 1951 because of the failure of the City to go forward with the widening project. The declaration alleges that some other structures extended to the existing building line in 1935, and that in 1953 the City permitted a store to be erected at 2452 Washington Boulevard extending to the old building line. The appellant complains that this last extension caused its theatre to be "boxed in", so that prospective patrons

could not see it when passing along the highway. The first count seeks damages for loss of use of the one thousand square feet along the front of its property for building purposes, due to the failure of the City either to institute condemnation proceedings or to repeal the 1928 ordinance. The second count seeks damages based on its loss of a tenant in 1951, loss of business in 1952, and loss of interest on its investment since 1953, when it tried unsuccessfully to sell the building, as well as the estimated cost of extending the main structure to the street, and the recovery of taxes paid on the strip in question. The claim for damages is on the ground that the City "has been guilty of unreasonable, unnecessary, willful and negligent delay in failing to diligently complete or repeal the pending condemnation proceedings referred to above". There are allegations of repeated protests by appellant urging the City to proceed with the widening.

It is well settled that a property owner cannot compel a condemning authority to proceed with a condemnation proceeding, and that such an authority may abandon the proceeding even after a jury has made an award without liability for payment of the inquisition. *State v. Ambrose,* 191 Md. 353. Prior to an actual "taking", a property owner is not deprived of possession or use, and whatever incidental loss he may sustain by reason of the uncertainty is generally held to be *damnum absque injuria, Schanfelter v. Baltimore,* 80 Md. 483, 494. See also *Nichols, Eminent Domain* (3d ed.), § 26.45, and Notes 31 A. L. R. 352, 364; 121 A. L. R. 12, 85. Even after a "taking", damages merely incidental to the relocation of a highway are not allowable. *Krebs v. State Roads Comm.,* 160 Md. 584, 593.

While not universally recognized, it has been held in this State that an independent action will lie to recover special damages actually suffered from unreasonable delay in electing either to abandon a condemnation proceeding or to pay the award therefor. The cases are fully reviewed in *Friendship Cemetery v. Baltimore,* 200

Md. 430. See also Note 92 A. L. R. 379. In some states the matter is covered by statute, but in *Munroe v. City of Woburn,* 107 N. E. 413 (Mass.), it was held that a statute providing "indemnity for loss or expense incurred in the proceedings", did not cover claims for the loss of rentals on the property, inability to sell the land, sums paid to an architect to make the building conform to the proposed line, or the recovery of taxes paid on the area proposed to be taken.

The rule stated in the Maryland cases is applicable to situations where condemnation proceedings have actually been started. Thus, in *Petroli v. Baltimore,* 166 Md. 431, 434, it was said that special damages may be recovered for "unreasonable delay in electing either to abandon the condemnation of his property, or to pay the award therefor", where there is "some showing that it was due to bad faith, negligence, or default in some legal duty * * *, and ordinarily whether it was unreasonable is a jury question." In that case, however, it was held that a case of unreasonable delay had not been stated. But in *Schanfelter v. Baltimore,* 80 Md. 483, 493, it was squarely held that the mere passage of an ordinance, although it affects the tenure and business of a property owner, does not give rise to a right of action. Cf. *Eckhoff v. Forest Preserve Dist.,* 36 N. E. 2d 245 (Ill.). This Court said, however: "We do not mean to say that an owner of property cannot under any circumstances have relief unless the company or municipality has actually commenced condemnation proceedings. It may be possible that a case might occur, which would show such a deliberate effort and determination to depreciate the value of property for the purpose of subsequently acquiring it by condemnation at a reduced and insufficient price, as to render the company or municipality liable on the ground of fraud."

Such a case was found in *Friendship Cemetery v. Baltimore, supra.* (See also the first appeal in that case, reported in 197 Md. 610.) There the City had been granted the authority to condemn land for an airport

by an Act of the Legislature, and had acquired all of the properties surrounding the plaintiffs' property. It had engaged in protracted negotiations for the purchase of the plaintiffs' property. In holding that a case for damages had been stated, this Court noted that the case was not one of "mere governmental inertia", but that the allegations were sufficient to support a finding of a jury that "appellees have acted in bad faith and unreasonably and have made a deliberate effort to depreciate the value of the appellants' property, so as to enable them to acquire it at a reduced price."

In the instant case there is no allegation of bad faith, or of any effort to negotiate or beat down the price. Nor are there any allegations that the proposal to widen Washington Boulevard in that section of the City ever got beyond the planning stage. It is not alleged that any other properties were acquired, or that any funds were appropriated for the purpose. The appellant seeks to distinguish the *Schanfelter* case, *supra,* on the ground that there was no statute then in effect requiring the condemning authority to "proceed diligently" in the execution of the ordinance authorizing the condemnation. We think the case cannot be distinguished on that ground, for the Court recognized a general duty to proceed with diligence, even in the absence of a statute. Moreover, the statute in the instant case refers only to diligence on the part of the Commissioners. No diligence on their part could provide the funds prerequisite to negotiation or the institution of proceedings, nor could they repeal the ordinance. We cannot infer from the allegations of the declaration that the delay was due to any fault on the part of the administrative agency, but rather because of "governmental inertia", or the preference given to other more pressing improvements. To hold that the City committed an actionable wrong in failing to implement its ordinance or repeal it, would go far beyond any decision of which we are aware, if, indeed, it would not be an unwarranted interference with the legislative prerogative. The appellant also seeks to distinguish

the *Schanfelter* case, on the ground that the Building Committee in that case had no power to condemn, but this seems to be a misapprehension. The Committee had power to condemn, and had in fact acquired other properties, although the Court noted that the power was qualified by a requirement that it first attempt to acquire by purchase the properties to make up the Court House square.

The appellant also contends that the allegations that the delay was "unreasonable, unnecessary, willful and negligent" are sufficient to invoke the rule. But these are mere conclusions of the pleader. Cf. *Conrad v. Takoma Park,* 208 Md. 363, 367.

No facts are alleged that would throw any light upon the reasons for the delay. Unless the fact that a period of about twenty-five years has elapsed, between the passage of the first ordinance and the filing of this action, would raise some presumption of negligence, there are no other facts from which negligence could be inferred.

The appellant certainly cannot complain of the delay prior to the time it acquired the property in 1936, and it was fully aware of the status of the proposal at that time, unlike the situation in the *Schanfelter* case, where the plaintiff was in possession when the Ordinance was passed. Here the appellant acquired the property only after it had obtained passage of an ordinance authorizing it to erect a building to cover the entire area of the lot which would remain "after the proposed widening of Washington Boulevard", with exits only on the front and back. We may assume, without deciding, that this was equivalent to a denial of permission to build on the twenty foot strip, although it does not appear that the appellant ever asked for such permission, and its failure to do so may well have been dictated by reasons of business expediency. Of course, there was no commitment by the City as to when it would proceed; the widening was referred to simply as a proposal. Cf. *Gontrum v. City of Baltimore,* 182 Md. 370, 374. It seems to be conceded that permission to erect a moving picture

theatre could only be obtained by the passage of an ordinance giving the City's assent, under the Baltimore City Code (1927 ed.), Art. 3, sec. 40. Cf. *Brown v. Stubbs,* 128 Md. 129. The appellee contends that since the City could grant or withhold consent, it could attach a condition to the privilege, which the appellant freely accepted. We need not decide whether this would raise an estoppel; at least it amounted to an acquiescence in the existing situation. There is no showing that the appellant suffered any damage by reason of the set-back until 1951, when it claims to have lost its tenant and to have been compelled to take over the theatre and operate it at a loss until it was closed in 1953. As the appellee suggests, it is quite likely that the loss was due to competition from other forms of entertainment, and not to street location, but that would doubtless be a matter of proof. The only delay from which the appellant could properly claim damages is not twenty-five years, but two years. In the absence of any allegations as to the reason for this delay, it can hardly be said to be unreasonable and negligent *per se.*

The appellant alleges that the closing of its theatre was due to the fact that the City permitted the owner of 2452 Washington Boulevard to extend its store to the old building line in 1953, which "boxed in" its property and rendered it unsuitable for a moving picture theatre. The appellee contends that even if the permission granted by the Board of Municipal and Zoning Appeals as to the property at 2452 Washington Boulevard was ill-advised or illegal, as a variance or exception under the zoning laws, it would not require or justify a similar variance or exception in the case of the appellant, citing *Easter v. City of Baltimore,* 195 Md. 395; nor would it give rise to an action for damages based on the estimated cost of extending the appellant's building to the same line. For present purposes it is sufficient to observe that the gravamen of the complaint in the instant case is the continued existence of the Ordinance of 1928, and the zoning ordinance is not before us. But

it would seem that even if the Ordinance of 1928 had been repealed in 1951, or were now repealed, the appellant would not be able to extend its theatre except upon compliance with the zoning laws limiting the extent of occupancy, and upon the passage of a special ordinance expanding the permission granted in the Ordinance of 1935. Thus it can hardly be contended that the alleged injuries were due to any failure to repeal the Ordinance of 1928, even assuming a duty upon the City to make an election in the matter.

The appellant also seems to argue that the twenty foot strip in front of its property was actually "taken" upon the filing of the plat prepared by the Highway Engineer in the office of the Commissioners for Opening Streets. It is alleged that this established a new building line, to which all future buildings must conform, and that the Building Engineer was prohibited from issuing any permit not in conformity therewith. Even if we assume, without deciding, that a new building line was established, we need not now decide whether this would constitute a "taking" under the rule laid down in the *Friendship Cemetery* cases, *supra*, and the cases there cited. The appellant admits in its brief that "no claim has been made in the declaration that the appellant's property has been taken without compensation in violation of the Maryland Constitution, Art. 3, sec. 40A, and the United States Constitution, 14th Amendment. We do not concede this point, however." The appellant has had exclusive use of the twenty foot strip, upon which it erected a marquee, for every purpose except that of extending its building. It is not shown that it ever sought to obtain permission to amplify that use. Its efforts were directed solely to persuading the City to widen the street, although, of course, it could not compel the City to do so by legal action.

For the reasons stated we think the demurrer was properly sustained.

*Judgment affirmed, with costs.*